UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

B. STANLEY MCCULLARS,

        Plaintiff,

v.                                            Case No: 6:17-cv-1587-Orl-40GJK

GRANT MALOY,

        Defendant.
_____/

## ORDER

This cause comes before the Court on Defendant Grant Maloy's Motion to Dismiss (Doc. 13), filed October 6, 2017. Plaintiff responded in opposition on November 6, 2017. (Doc. 22). With briefing complete, the matter is ripe for review.

**I.    BACKGROUND**[1]

This action centers on Defendant Grant Maloy's ("Maloy") termination of Plaintiff B. Stanley McCullars' ("McCullars") employment with Seminole County, Florida, because of an online post by McCullars. On April 4, 2016, McCullars was hired as Assistant Financial Director for the Clerk of Court and Comptroller of Seminole County, Florida. (Doc. 1, ¶ 9). At all times relevant to this action, Maloy was the Seminole County Clerk of Court. (*Id.* ¶ 11).

Plaintiff's online post was apparently precipitated by a March 16, 2017, press conference held by Orange/Osceola County State Attorney Aramis Ayala ("Ayala"). (*Id.* ¶

---

[1] This account of the facts is taken from the Complaint (Doc. 1). The Court accepts these factual allegations as true when considering motions to dismiss. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

14). At the press conference, Ayala announced that her office would not seek the death penalty under any circumstances in any case. (*Id.*). Ayala's statements received local and national media coverage, triggered intense public commentary, and led Florida Governor Rick Scott to reassign all capital cases previously assigned to Ayala to a different state attorney. (*Id.* ¶ 15).

The social media post at issue was dispatched after 10:00 p.m. on Sunday, March 19, 2017. (*Id.* ¶¶ 17, 19). McCullars' post (the "Post") stated: "maybe she [Ayala] should get the death penalty," and "she should be tarred and feathered if not hung from a tree." (*Id.* ¶ 17). The next day, at 7:00 a.m., the Post was deleted. (*Id.* ¶ 19). However, before it was deleted, someone had taken a screen image of the Post and shared it with other third parties. (*Id.* ¶ 20). That same day, March 20, Maloy told McCullars that the Post "was clearly a First Amendment issue," and assured McCullars that his job was safe. (*Id.* ¶ 21). Notwithstanding these assurances, McCullars was placed on administrative leave approximately an hour later. (*Id.* ¶ 22). On March 21, 2017, Maloy directed the human resources manager to terminate McCullars based solely upon the Post. (*Id.* ¶ 23). After his termination, McCullars was "instructed that he should provide a resignation letter, which he did," allegedly involuntarily. (*Id.* ¶ 26). At the time of the Post, Defendants did not have a social media policy in place. (*Id.* ¶ 27).

The Complaint asserts two 42 U.S.C. § 1983 claims against Defendant Maloy (in his official and individual capacities), alleging that Maloy violated McCullars' First Amendment rights when he terminated McCullars for engaging in protected speech.

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. To survive the motion, the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the plaintiff alleges enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The mere recitation of the elements of a claim is not enough, and the district court need not give any credence to legal conclusions that are unsupported by sufficient factual material. *Id.* District courts must accept all well-pleaded allegations within the complaint and any documents attached thereto as true and must read the complaint in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam).

## III. DISCUSSION

Defendant Maloy moves to dismiss Count I based on qualified immunity. (Doc. 13). His motion is due to be denied.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To receive qualified immunity, a government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted). Plaintiffs do not dispute this first step. (Doc. 22, p. 5.)

"Once the defendant establishes that he was acting within his discretionary

authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194. To do so, the plaintiff must make a two-part showing. The plaintiff must allege that the facts of the case, if proven to be true, would make out a constitutional violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Beshers v. Harrison*, 495 F.3d 1260, 1265 (11th Cir. 2007). The plaintiff must also allege that the constitutional right was "clearly established" at the time of the alleged misconduct. *Pearson*, 555 U.S. at 232. Because qualified immunity provides a complete defense from suit, "courts should ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013).

Courts are not required to conduct the qualified immunity analysis in any particular order. Rather district courts are "'permitted to exercise their sound discretion in deciding which' prong of the inquiry to address first." *Festa v. Santa Rosa Cnty. Fla.*, 413 F. App'x 182, 185 (11th Cir. 2011) (per curiam) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). The Court will first address the "clearly established" question, before moving to the constitutional violation analysis.

### A. "Clearly Established" Law

Maloy's actions were prohibited by "clearly established" law. "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creignton*, 483 U.S. 635, 640 (1987)). Even in novel factual circumstances, "officials can still be on notice that their conduct violates established law . . . ." *Id.* at 741 (rejecting a requirement that previous cases have "materially similar" facts to give officials notice). Therefore, the Court must decide whether

a reasonable official would understand that terminating McCullars' employment because of the Post would violate McCullars' First Amendment rights.

The government generally enjoys "broad discretion in its employment decisions." *Boyce v. Andrew*, 510 F.3d 1333, 1341 (11th Cir. 2007) (per curiam). However, the First Amendment affords public employees protection for certain kinds of speech. "[F]or a government employee's speech to have First Amendment protection, the employee must have (1) spoken as a citizen and (2) addressed matters of public concern." *Id.* A public employee is only entitled to First Amendment protection when speaking as a citizen in regards to a matter of public concern—thus the First Amendment is not implicated by statements made pursuant to the employee's official duties. *Id.* at 1342–43.

Where relevant speech is made as a citizen on a matter of public concern, courts are to consult a balancing test to determine whether the First Amendment affords protection. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). "[T]he interests of the government employee, as a citizen, in commenting upon matters of public concern must be balanced with the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Boyce*, 510 F.3d at 1343 (alteration accepted) (internal quotation marks omitted) (quoting *Pickering*, 391 U.S. at 568).

McCullars asserts that Maloy's alleged actions were proscribed by "clearly established" law. (Doc. 22, pp. 15–17). McCullars contends that the First Amendment protects public employees from being "fired in retaliation for speaking on matters of public concern except where the government's interest in the proper functioning of the agency outweighed the employee's First Amendment rights[.]" (Doc. 22, p. 15 (citing *Pickering v.*

*Bd. of Ed.*, 391 U.S. 563, 568 (1967); *Connick v. Myers*, 461 U.S. 138 (1982); *Rankin v. McPherson*, 483 U.S. 378 (1987); and *Berdin v. Duggan*, 701 F.2d 909 (11th Cir. 1983))).

*Pickering* and its progeny establish that a government entity "may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." *Rankin*, 483 U.S. at 383. Courts are to employ the *Pickering* balancing test to discern whether a public employee's speech is entitled to First Amendment protection. Before balancing interests, the threshold question is whether the employee's speech may be "fairly characterized as constituting speech on a matter of public concern." *Rankin*, 483 U.S. at 384–85 (quoting *Connick*, 461 U.S. at 146) ("Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record.").[2] If so, *Pickering* instructs courts to balance the employee's "interest in making [the] statement against 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'"[3] *Id.* at 388 (quoting *Pickering*, 391 U.S. at 568). "In striking this balance, we consider these factors: '(1) whether the speech at issue impedes the government's ability to perform its duties efficiently, (2) the manner, time, and place of the speech, and (3) the context within which the speech was made.'" *Stanley v. City of Dalton*, 219 F.3d 1280, 1289 (11th Cir. 2000) (quoting *Bryson v. City of Waycross*, 888 F.2d 1562, 1567 (11th Cir. 1989)). "The

---

[2] *See also id.* at 387 ("The inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a matter of public concern.").

[3] *See also id.* at 384 ("This balancing is necessary in order to accommodate the dual role of the public employer as a provider of public services and as a government entity operating under the constraints of the First Amendment.").

disciplining of a public employee, for exercising his first amendment right to speak, clearly contravenes established law." *Berdin v. Duggan*, 701 F.2d 909, 913 (11th Cir. 1983).

McCullars cites various other principles to support his assertion that Maloy's conduct was proscribed by clearly established law. (Doc. 22, pp. 15–16). First, the First Amendment protects speech regardless of its social worth or whether the idea communicated is mainstream. *Stanley v. Georgia*, 394 U.S. 557, 564–66 (1969). Second, the Supreme Court has declared that a government employee may not be discharged "for *any* expression inconsistent with the goals of" their employing agency solely due to their position as a government employee. *Rankin*, 483 U.S. at 391 n.17 (emphasis added). Third, "Where . . . an employee serves no confidential, policymaking, or public contact role, the danger to the agency's successful functioning from that employee's private speech is minimal." *Id.* at 391.

In conclusion, McCullars contends that "[a]ny reasonable government officer would have known under reasoning of the cases discussed above" that Maloy's actions were constitutionally infirm. (Doc. 22, p. 16). Moreover, McCullars emphasizes that the Complaint does not allege a colorable state interest in promoting efficient public service,[4] therefore, McCullars' firing obviously violated his First Amendment rights. (*Id.* (citing *Tindal v. Montgomery Cty. Comm'n*, 32 F.3d 1535, 1540 (11th Cir. 1994) (where the "state interest half of the [*Pickering*] balance . . . is empty," the plaintiff's speech interests outweighed the state interest in promoting efficient public service))).

---

[4] Instead, the Complaint affirmatively alleges that "[t]he Post had not affected the efficiency of the Defendant Clerk's office, and no disruption of the workplace existed that could justify terminating McCullars' employment on account of McCullars exercising his First Amendment right. (Doc. 1, ¶ 25).

Maloy offers *Stanley v. City of Dalton*, 219 F.3d 1280 (11th Cir. 2000), to rebut McCullars' contention that his termination was proscribed by clearly established law. (Doc. 13, p. 16.) There, the Eleventh Circuit affirmed the principle that "because *Pickering* requires a balancing of competing interests on a case-by-case basis, our decisions tilt strongly in favor of immunity by recognizing that only in the rarest of cases will reasonable government officials truly know that the termination or discipline of a public employee violated 'clearly established' federal rights." *Stanley*, 219 F.3d at 1298 (alteration accepted).

Viewing the Complaint in the light most favorable to Plaintiff, this is allegedly one of those "extraordinary" cases where "*Pickering* balancing would lead to the inevitable conclusion that" McCullars' firing was unconstitutional, precluding Maloy's claim of qualified immunity. *See Dartland v. Metro. Dade Cty.*, 866 F.2d 1321, 1323 (11th Cir. 1989). The Complaint alleges that McCullars' employment with Seminole County was terminated after he engaged in speech on a matter of public concern, implicating the *Pickering* balancing test. The government's side of the *Pickering* balance is empty, as the Complaint is devoid of allegations that the Post impacted on Defendant Maloy's "need to maintain loyalty, discipline[,] and good working relationships among those he supervises." *See id.* at 1324; *Tindal*, 32 F.3d at 1540. Defendant's arguments to the contrary invoke facts outside of the Complaint, and are therefore premature at this stage of the proceedings.

On McCullars' side of the *Pickering* balance is his interest in free expression. The speech at issue touched on a matter of public concern, thus it "occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Connick*,

461 U.S. at 145 (internal quotation marks omitted). Although McCullars disputes Maloy's contention that the statements in the Post had racial connotations,[5] the Court has little difficulty finding that the statements made in the Post were "rude and insulting," lessening his interest in making them to some degree. *See Dartland*, 866 F.2d at 1324. Nonetheless, the First Amendment protects "vehement, caustic, and sometimes unpleasantly sharp" speech. *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).[6] McCullars' statements in the Post therefore merit First Amendment protection.

Indeed, it has been clearly established since at least 1986 "that a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." *See Rankin*, 483 U.S. at 383. Defendant's invocation of *Stanley* is inapposite. In *Stanley*, the result of a *Pickering* balancing was unclear, as both the government and plaintiff had substantial interests to be weighed against each other. 219 F.3d at 1298. Here, the allegations of the Complaint do not reveal any government interest affected by the Post, but do reveal McCullars' interest in speaking as a citizen on

---

[5] The Post suggested that "maybe [Ayala] should get the death penalty" and "she should be tarred and feathered if not hung from a tree." (Doc. 1, ¶ 17). Maloy's Motion to Dismiss characterizes the Post as offensive and "implicitly racist," noting that Ayala is a black woman. (Doc. 13, pp. 2, 13, 15). McCullars goes to great lengths to demonstrate that "tar and feather" is an olden figure of speech that lacks racial connotations. (Doc. 15, p. 22 n.3). Tellingly, he spends less time tracing the history and evolution of the "hung from a tree" statement. Notwithstanding the obvious racial connotations of that statement, McCullars is correct that the Complaint does not allege Ayala's race, so the Court will save a more searching analysis of the Post for another day.

[6] *See also Bond v. Floyd*, 385 U.S. 116, 136 (1966) ("Just as erroneous statements must be protected to give freedom of expression the breathing space it needs to survive, so statements criticizing public policy and the implementation of it must be similarly protected.").

a matter of public concern. Accordingly, McCullars has met his burden of pleading that Maloy's conduct was proscribed by clearly established law.

B.  **Constitutional Violation**

Having resolved the "clearly established" prong in favor of McCullars, the Court has little difficulty finding that the Complaint alleges a constitutional violation. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). To state a claim for unconstitutional "retaliation for protected speech in violation of the First Amendment," a complaint must satisfy a four-part test. *See Bryson v. City of Waycross*, 888 F.2d 1562, 1565–66 (11th Cir. 1989). The Complaint states a plausible claim for retaliation in contravention of the First Amendment.

The first part of the *Bryson* test asks "whether [McCullars'] speech may be 'fairly characterized as constituting speech on a matter of public concern.'" *See Tindal*, 32 F.3d at 1539 (quoting *Bryson*, 888 F.2d at 1565). The Complaint sufficiently alleges that the Post constituted speech on a matter of public concern. (Doc. 1, ¶¶ 14–18). The second part of the *Bryson* test demands a *Pickering* balance, asking "whether [McCullars'] interest in h[is] speech . . . outweighed the state's interest in promoting efficient public service." *See Tindal*, 32 F.3d at 1540 (quoting *Bryson*, 888 F.2d at 1565). As discussed more fully above, the Complaint adequately alleges that the *Pickering* balancing test favors McCullars. The third and fourth parts ask whether McCullars' speech "played a substantial role in" his firing, and whether Maloy "has demonstrated that he would have terminated [McCullars] regardless of" his protected speech, respectively. *See Tindal*, 32 F.3d at 1540. Accepting the allegations of the Complaint as true, McCullars has likewise met these requirements. (Doc. 1, ¶¶ 35–39).

## IV. CONCLUSION

For the aforementioned reasons, it is **ORDERED AND ADJUDGED** that Defendant Grant Maloy's Motion to Dismiss (Doc. 13) is **DENIED**. Defendant, Grant Maloy, individually, shall answer the Complaint no later than April 16, 2018.

**DONE AND ORDERED** in Orlando, Florida on April 2, 2018.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties